# United States District Court
## Western District of Virginia
### Harrisonburg Division

| | |
|---|---|
| ELLEN R. FARIA, | Civil No.: 5:10cv00076 |
| *Plaintiff,* | |
| v. | **REPORT AND RECOMENDATION** |
| MICHAEL ASTRUE, Commissioner of the Social Security Administration | |
| | By: Hon. James G. Welsh |
| *Defendant* | U. S. Magistrate Judge |

This civil action instituted by the plaintiff, Ellen R. Faria, challenges a final administrative determination of the Commissioner of the Social Security Administration ("the agency") denying her claims of entitlement to a period of disability insurance benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423, and 42 U.S.C. §§ 1381 *et sec.*, respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

In her applications the plaintiff alleges a February 1, 2006 disability onset date [1] due to diabetes; vision problems; pain and numbness in her back, neck, hips and extremities; fatigue; and depression. (R.114; *see also* R.144). Her applications were denied initially, on

---

[1] As the Commissioner points-out in his brief, this alleged onset date is the same day the plaintiff lost her job as a telephone operator working for an answering service as the result of a business layoff. *(See* R.48,115).

reconsideration, and following an administrative hearing. (R.19-28,60-70,72-73,76-90,92-100). In his September 2, 2008 written decision, the administrative law judge ("ALJ") concluded that the plaintiff retained the functional ability to perform work at a light exertional level, [2] including her past relevant work as a telephone operator, dietary aide, and waitress. (R.12-15,24,32). Her request for Appeals Council review was also denied (R.1-8), and the ALJ's written decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Along with his Answer to the plaintiff's Complaint, the Commissioner filed a certified copy of the Administrative Record ("R"), which includes the evidentiary basis for the findings and conclusions set forth in the ALJ's decision. By an order of referral entered on December 21, 2010 this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment; each has filed a supporting memorandum of points and authorities, and no timely request was made for oral argument.[3] Accordingly, the following report and recommended disposition is submitted.

I.   **Issue Presented on Appeal**

---

[2] "*Light work* involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [an individual] must have the ability to do substantially all of these activities. If someone can do light work, [the agency considers that the individual] can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[3] WDVa Gen. R. 4(c)(2) directs that a plaintiff's request for oral argument in a Social Security case must be made in writing at the time his or her brief is filed.

Citing four separate Social Security Regulations ("SSRs") the plaintiff argues on appeal that the ALJ unfairly discounted her testimony, failed to give the requisite decisional value to her work history, failed to consider her obesity and failed to assess her exertional and non-exertional impairments in combination.

## II.   Summary Recommendation

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be denied and the Commissioner's motion for summary judgment be granted.

## III.   Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB or to SSI. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than de novo. "It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for

Case 5:10-cv-00076-MFU-JGW   Document 16   Filed 08/24/11   Page 3 of 12   Pageid#: 410

substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (quoting *Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## IV. Facts and ALJ Findings

The plaintiff was forty-nine (49) years of age at the time of her alleged disability onset date. (R.32,105,114,232). She has an 8th grade education. (R.32). She is 5'3" in height, and as reported her weight has varied over time between 223 and 257 pounds. (R.32,113,187,195,243, 343,354). Her past relevant employment has included jobs as a waitress for one 1 year, a retail store clerk/cashier for five months, a nursing aide for one year, a kitchen worker in a nursing home for two years, and an answering service operator for ten 10 years.[4] (R.33,35-38,115, 125,336). As identified by the ALJ, the plaintiff's decisionally significant medical conditions include diabetes, a peripheral neuropathy, trigger fingers (also known as Dupuytren's contracture or palmar fibromatosis) and obesity. (R.21,24). Her depression, vision impairment, and high

---

[4] As described by the plaintiff, this job was essentially sedentary in exertional level, requiring "very little" lifting, reaching or stooping, no postural activities, and a total of only about 30 minutes or so standing or walking during an 8-hour day (R.33-34,126).

4

blood pressure (hypertension and hyperlidemia) were found by the ALJ not to be *severe* and to impact only mildly the plaintiff's functional abilities. (*Id*).

In the Function Reports submitted by the plaintiff in connection with her applications, she described her daily activities as regularly including meal preparations, household cleaning and laundry, washing dishes, caring for her cats, driving,[5] weekly shopping, computer use, watching television, playing cards, visiting with family and friends, and caring for her two pre-teen grandsons[6] in her custody. (R.134-135,137,155-157).

Her University of Virginia Medical Center records show that she was seen by Joel Schecttman, M.D., through the Outpatient Clinic on twelve occasions between February 25, 2005 and April 22, 2008 for general health maintenance and for monitoring of her diabetes, high blood pressure, elevated lipid level, and anti-depressant medication regime. (R.187,194-195, 198,216,224-226,232-233,245-246,248-249,251,343-344,348,350,353-354). On one or more occasions during this period she reported experiencing problems with her vision, numbness in her hands and feet, pain in her neck, back, shoulder and joints, trigger fingers, and feeling "icky," "sluggish" or "fatigued." (R.187,195,216,224-226,232,245-247,251,348,353). Any required treatment was conservative, and none necessitated any inpatient or other acute care. (*See* R.283). Vision testing disclosed only a "mild" Nonproliferative Diabetic Retinopathy ("NPDR") that did not significantly affect her vision. (R.212,*see* R.283). X-rays of her hands demonstrated no bony

---

[5] On the day of the hearing she drove thirty-five to forty minutes from her home to the hearing office without difficulty. (R.32-33).

[6] These grandsons for whom she is the custodian were 10 and 7 years of age at the time of the administrative hearing. (R.32).

abnormality. (R.275). Her trigger finger condition required no treatment. (R.353). She declined prescription treatment of her neuralgia and associated pain. (R.198), And the medical record suggests no clinical evidence of any joint or muscle inflammation. (*See* R.187,195).

At the time of a consultive examination by Mammen Mathew, M.D., in August 2006, the plaintiff was observed to walk with a slow and "somewhat waddling" gait due to her obesity, to have "fair" standing balance, to be able to stand on her heels, toes and on one leg, and to perform tandem walking without loss of balance. (R/284). On examination she was found to have a "mild" numbness (bilateral neuropathy) in both her upper and lower extremities and to have a trigger finger condition in left hand.. (R.284,287). Dr. Matthew's clinical examination disclosed no spinal abnormality, no spinal range-of-motion loss, no loss of strength in any extremity, no muscle atrophy in any extremity, and no range-of-motion loss in any extremity. (R.283-284,287-287).

After reviewing Dr. Matthew's consultive examination report, the medical record and the plaintiff's reported daily activities, a state agency medical reviewer concluded that the plaintiff retained the ability to perform a full range of light work. (R.294). As part of this assessment of the record, the state agency reviewer also concluded that in combination the plaintiff's medical history, her treatment, the character of her symptoms and her reported daily activities, impelled one to conclude that her testimony concerning the debilitating nature of her medical condition was "unpersuasive" and only "partially credible." (R.295). Separately concluding that the plaintiff suffered from no significant functional limitation due to any mood disturbance, a state

6

agency psychological reviewer noted the absence of affective disorder criteria, [7] the absence of any depressive disorder diagnosis, the absence of any hospitalization for a mental health issue, the absence of any treatment by a mental health professional, the absence of any evidence of any mood disturbance, and the absence of any evidence of any functional limitation other than a "mild" concentration disturbance. (R.300,307, 309)

V.    Analysis

As the Commissioner fairly points-out in his brief, the plaintiff's principal arguments on appeal centers on her contention that the ALJ erred by discounting her testimony concerning the intensity, persistence and limiting effects of her symptoms "to the extent" they are inconsistent with the other evidence in the record. Of necessity, therefore, it is her testimony upon which she must focus to support the contention that her pain and other subjective complaints limit her functional capacity to such a degree she is both unable to perform the requirements of any of her past relevant jobs and unable to perform any competitive work on a regular and sustained basis. On review this argument is fatally flawed for several reasons.

First, at least in part the argument is based on an erroneous predicate assumption that the plaintiff's allegations of pain and other subjective symptoms can, standing alone, constitute conclusive evidence of disability. 20 C.F.R. § 416.929 ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ."); *Mickles v. Shalala*,

---

[7] 20 C.F.R. Part 404, Subpt. P, Appx. 1, §12.04.

7

29 F.3$^d$ 918, 919 (4th Cir. 1994) ("a subjective allegation of pain, standing all alone, shall not be conclusive evidence of disability") (internal quote marks omitted).

Second, a review of the ALJ's decision demonstrates that his discount of the plaintiff's complaints of pain and other subjective symptoms was based on substantial evidence, and that his credibility assessment was made in according to the applicable evaluation standard. Long-settled president in this Circuit requires that an individual's statements concerning his or her pain and other subjective symptoms must be assessed pursuant to a two-part test. *Craig v. Chater*, 76 F.3$^d$ 585, 594-596 (4th Cir. 1996). The individual must first prove the existence of a medical condition that could cause the subjective complaints, and once that underlying condition has been established by acceptable objective medical evidence it is incumbent on the ALJ to evaluate the potentially disabling manifestations (*i.e.*, the intensity, severity and functional effect) of the claimant's subjective complaints. *E.g., Id.; Hyatt v. Sullivan*, 899 F.2$^d$ 329, 337 (4th Cir. 1990).

Consistent with this evaluation process and to the extant demonstrated by the objective medical evidence, the ALJ first determined that the plaintiff's underlying medically determinable impairments (diabetes, obesity, trigger fingers, peripheral neuropathy, and mild diabetic retinopathy), "could be reasonably expected to produce" her alleged symptoms. (R.25). Then, considering the entire record he weighed her testimony and her subjective complaints in keeping with the applicable regulations.[8] (R.25-27).

---

[8] The factors identified in the applicable regulation for the ALJ to consider in determining the extent to which subjective symptoms limit a claimant's capacity to work include: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) any treatment, other than medication, the individual

8

In making his credibility determination the ALJ specifically noted that the plaintiff's claim of an inability to perform any work since February 2006 was contradicted by the fact that she stopped working that month due only to a layoff, not due to any identified medical condition, and that her claim was equally inconsistent with her collection of unemployment and certified readiness and ability to work from March through November 2006. (R.25). Similarly, he took note of the apparent inconsistency between the plaintiff's testimony concerning the intensity and persistence of her pain and associated symptoms and the scope of her daily activities, her relatively conservative and limited treatment history, her intermittent use of pain medications, the absence of any hospitalizations or emergency room treatment, the absence of any functional evaluation by a treating specialist, the findings of the consultive examiner, and the minimal objective medical findings in the record. (R.25-27). *Inter alia*, contrary to the plaintiff's testimony about the degree to which she claims to be functionally limited due to her several medical problems, the ALJ additionally found the functional assessments made by the consultive examiner and by the state agency reviewers to be fully supported by the objective medical evidence and the daily activities. (*Id.*).

Thus, the ALJ thoroughly considered the record as a whole and gave valid reasons for his finding that the plaintiff's statements about her inability to work and about the intensity, persistence limiting effects of her symptoms not to be "credible." Although some of the evidence

---

receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. 416.929(c). Additionally, the ALJ must also consider any medical signs and laboratory findings; any diagnosis, prognosis, or other medical opinions provided by medical sources; any statements or reports about the claimant's medical history, treatment and response; any prior work record, any work efforts; the claimant's daily activities; and any other information concerning the claimant's symptoms and how the symptoms affect the individual's ability to work. SSR 96-7p.

9

could be read in theory to support different finding, as the plaintiff also contends, the argument is not relevant to the core point at issue in her appeal. "Credibility is the province of the ALJ." *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992). He had the opportunity to observe the demeanor of the plaintiff; his conclusions concerning her credibility are entitled to great weight, and a reviewing court should "generally treat credibility determinations made by an ALJ as binding upon review" where, the ALJ has given specific, legitimate reasons for disbelieving her testimony. *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984), *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).

## VI. Proposed Findings

1. The ALJ's credibility determinations are based on substantial evidence;

2. The ALJ properly and adequately considered the plaintiff's obesity and its impact on her residual functional abilities;

3. The ALJ properly and adequately considered the plaintiff's work history in making his credibility assessment and in making his assessment of the plaintiff's residual functional abilities;

4. The ALJ performed a decisionally adequate review of the whole record, including evidence regarding the plaintiff's mental and physical conditions;

5. The ALJ's residual functional capacity assessment is based on substantial evidence;

6. Through the date of the ALJ's decision the plaintiff was not disabled within the meaning of the Act; and

7. All facets of the Commissioner's final decision in this case are supported by substantial evidence, and it should be affirmed.

10

## VII. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VIII. Notice to the Parties

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 24th day of August 2011.

                                            /s/ *James G. Welsh*
                                        United States Magistrate Judge